United States Bankruptcy Court
District of Massachusetts

In re:                                            )
                                                  )
SUSAN B. WEERAWAT,                                )         Chapter 7
                           DEBTOR.                )         Case No. 06-40098-JBR
_____ ___)

**ORDER ON TRUSTEE'S MOTION FOR CONTEMPT**

This matter came before the Court for hearing on the Chapter 7 Trustee'S Second Motion for Contempt [#142] by which the Trustee seeks an order holding the Debtor in contempt and requesting that the Debtor be incarcerated for failing to comply with this Court's Order of January 4, 2007 directing the Debtor to turn over $100,000 to the Trustee.

**FACTS**

On November 3, 2005 the Debtor, who was a 50% owner of property located at 96 June Street, Worcester, Massachusetts (the "Property"), and the co-owner sold the Property for $320,000. The Debtor received a check for $141,095.20 from the proceeds of the sale and on November 4, 2005 deposited her share of the sale proceeds in a Sovereign Bank account in the name of Jason Weerawat, the Debtor's son. According to the bank records provided to the Court, Jason held the account in trust for the Debtor. The records also indicate that two withdrawals of $3,000 were made on November 14 and 17, 2005 and a withdrawal in the amount of $2,000 was made on January 6, 2006. On January 30, 2006 the remaining balance of $133,665.78 was withdrawn and the account closed. On January 31, 2006 the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code. The

Statement of Financial Affairs failed to list the sale of the Property. Schedule B failed to list any of the sale proceeds.

On April 12, 2006 the Debtor appeared with her attorney at the first meeting of creditors held pursuant to 11 U.S.C. § 341 meeting (the "§ 341 Meeting"). At the § 341 Meeting, the Debtor asserted her privilege against self-incrimination under the Fifth Amendment to the United States Constitution when questioned about the sale of the Property and the sale proceeds. The Chapter 7 Trustee then continued the § 341 Meeting to May 24, 2006. Following the April § 341 Meeting, the Debtor retained new counsel, Francis Lafayette, who accompanied the Debtor to the continued § 341 Meeting where the Debtor testified that she still had at least $30,000 of the sale proceeds. Shortly thereafter the Trustee filed a motion to compel the turnover of at least the $30,000.[1] The Debtor opposed the turnover motion on the grounds that she asserted her Fifth Amendment rights on the advice of her former counsel, who she claimed failed to adequately advise her. She did admit the substantive allegations of the turnover motion, including paragraph 6 which reads as follows:

> 6. The Debtor admitted [at the § 341 Meeting] that said funds belonged to her and that they constituted property of the bankruptcy estate as of the date of her petition pursuant to 11 U.S.C. Section 541, said funds are subject to turnover to the Trustee pursuant to 11 U.S.C. Sections 105 and 542....

The Debtor, through Attorney Lafayette, also filed a motion to either dismiss the

---

[1] The Chapter 7 Trustee and the United States Trustee both commenced adversary proceedings to deny the Debtor a discharge. The Debtor agreed to entry of judgment denying her a discharge pursuant to 11 U.S.C. § 727(a)(2)(A), § 727(a)(2)(B), § 727(a)(4)(A), and § 727(a)(5).

2

bankruptcy or permit her to convert her case to Chapter 11 on the basis that her prior counsel did not fully inform her "of the effect that the Chapter 7 case would have on her situation and without adequate preparation of the Chapter 7 bankruptcy Voluntary Petition parts." That motion was scheduled for hearing but in the interim, the Court heard and allowed the turnover motion. By order dated June 22, 2006 (the "Turnover Order") required the Debtor to immediately turnover at least the $30,000 which she agreed was estate property.[2] The Debtor sought reconsideration, arguing that she received inadequate assistance from her former counsel. Reconsideration was denied and although the Debtor appealed the denial of her motion for reconsideration, the appeal was dismissed. She also unsuccessfully sought a stay of the Turnover Order.

On July 26, 2006 the Chapter 7 Trustee filed his first motion for contempt [#91] because the Debtor had not complied with the Turnover Order. On August 31, 2006 the Court held a hearing on the Trustee's motion for contempt as well as on the Debtor's motion to dismiss or alternatively to convert the bankruptcy case to Chapter 13.[3] The Debtor's motion was denied. The Trustee's motion for contempt was continued to October 5, 2006 and the Debtor was ordered to be present at the continued hearing. The Court further ordered the Debtor to pay $15,000 by September 11, and $15,000 by

---

[2]The Debtor accompanied Attorney Lafayette to the hearing on the turnover motion and through him advised the Court that there only about $5,400 remaining as she had apparently used the remainder for her son whom Attorney Lafayette stated "she had taken to college."

[3]The Debtor retained attorney Herbert Weinberg to assist in representing her in connection with her motion to dismiss.

3

October 1, 2006.[4]  The first motion for contempt became moot when the Debtor, albeit late, paid the Trustee $30,000.

On November 28, 2006 the Trustee filed a second turnover motion seeking $100,000 because he learned that, on the Petition Date, Jason Weerawat deposited $130,000 into his account, an account which the Debtor admitted was within her control.[5]  The Court scheduled a hearing for December 21, 2006.  Because of Attorney Lafayette's illness, the Court continued the hearing to January 3, 2007 and then to January 4, 2007 when it was held.  At the hearing, Attorney Lafayette stated that the Debtor claims that the money belongs to the care of Jason and that the Debtor refused to tell him where she was residing, other than to say she is somewhere in New York.[6]  The Debtor, who did not attend the hearing, was ordered to turnover $100,000 to the Trustee (the "Second Turnover Order").  When the Debtor failed to comply with the Second Turnover Order, the Trustee filed his second motion for contempt.

The second motion for contempt was scheduled for hearing on February 8, 2007.  On February 6, 2007 the Debtor sought a continuance until *May 10 or 11, 2007*, some three months later.  As grounds for her request the Debtor again challenged the

---

[4] On September 28, 2006 the Debtor filed an emergency motion requesting that she be allowed to appear telephonically at the October 5, 2006 continued contempt hearing on the basis that she could not leave her son because of his psychological problems.  The motion was granted.

[5] At the continued § 341 Meeting, the Debtor testified that the sale proceeds were always within her control, regardless of the fact that another party might appear to have possession.

[6] The Debtor has not filed a notice of change of address.

representation she received from her prior counsel. In an email from the Debtor to Attorney Lafayette attached to her request for continuance, she reiterated that she could not leave her son and further stated she spent the sale proceeds because her husband was not working. By order dated February 7, 2007 the Court continued the hearing on the second contempt motion to February 22, 2007 at 4 P.M. with a notation that the Debtor could bring her son and husband to the hearing if necessary but that no further continuances would be granted. Subsequently, at the apparent behest of the Debtor, the Director of Worcester County Chapter of the ACLU of Massachusetts sent an ex parte letter to Court,[7] requesting that the Court reconsider its order continuing the hearing to February 22, 2007. In the letter the Director stated that the Debtor "has requested that the hearing be rescheduled for *August 23 or 24*, since these are the next times her son will not be in school." (Emphasis added). Attorney Lafayette also filed a motion to permit the Debtor to appear telephonically at the contempt hearing and attached another email from the Debtor. In the email, the Debtor requested a continuance claiming she could not leave her son and that he would not have a school break until August 24 or 25 and, if such a postponement was not granted, permission to attend the hearing telephonically. The motion was denied and the Debtor was ordered to personally appear and reminded that she could have her husband and son accompany her. She was also strongly urged to have counsel with her.

The following day, Attorney Lafayette sought to withdraw from this case on the

---

[7]The Court docket the letter so that all parties on the electronic service list, including the Debtor's various attorneys and the Trustee would be aware of the communication.

5

grounds that he had no way of immediately contacting the Debtor and she had informed him she did not intend to attend the contempt hearing. Moreover he stated that the Debtor had asked him to seek a continuance of the contempt hearing on the grounds that she had no transportation from her present undisclosed location to Worcester. Attorney Layette represented that when he refused, the Debtor fired him. The Court denied the motion to withdraw pursuant to MLBR 2091-1.

On February 21, the day before the contempt hearing, the Debtor called the Clerk's Office to advise the case administrator that she was not going to attend the contempt hearing and that she fired Attorney Lafayette and did not want him appearing on her behalf at the hearing. She further stated that she was out of state and could not leave her son. She stated that if she was arrested, her son would harm himself. The Court held the contempt hearing on February 22, 2007. The Debtor did not appear nor has she turned over the $100,000 as previously ordered. Attorney Lafayette, who attended the hearing telephonically and was not in his office, reported that the Debtor told him she was not going to cooperate with the Court's order. He also reported that his staff told him the Debtor called his office and asked to have Attorney Lafayette continue to appear on her behalf. Following the hearing, the Court received a letter mailed by the Debtor in which she rehashed much of her previous comments and stated that neither her husband nor her son could care for themselves. She added that someone at Attorney Lafayette's office told her she could attend the February 22 contempt hearing telephonically and seemed to blame Attorney Lafayette for her current predicament.

**DISCUSSION**

This Court has the authority to hold a party in contempt in necessary pursuant to 11 U.S.C. section 105(a), which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."Those contempt powers inherently include the ability to sanction a party." *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 445 (1st Cir. 2000).

In this case the debtor has repeatedly ignored orders of this Court, both to turnover estate property to the Trustee and then appear to explain her failure to do so. She has proffered inconsistent explanations for her behavior, arguing that the money she took was for the care of her son yet acknowledging it was estate property.  Despite the fact she agreed that the $30,000 remaining form the sale proceeds she was holding at the time of the continued § 341 Meeting was estate property, she continued to spend that money so that less than one month later when the Court held the hearing on the first turnover motion, the Debtor stated she had only approximately $5,400 left.  She has alleged she cannot appear before the Court for hearing because of her son's condition yet she did appear without him at the October 5, 2006 hearing.  When ordered to appear to explain why she had not turned over $100,000 which was part of the sale proceeds deposited into Jason's account, she has done whatever she could to avoid appearing before this Court.  She has offered inconsistent dates as to when she could be here and raises issues irrelevant to the ultimate concern of the Court, namely the return of sufficient funds to pay creditors in full.  She complains of the representation she receives and blames her attorneys and their staff when her own behavior exacerbates the problem.  The Debtor has made it abundantly clear that she does not

intend to be bound be any orders of this Court with respect to turning over sufficient funds to pay her creditors in full plus the costs of administering this estate, which continue to increase in no small part because of the Debtor's recalcitrant behavior.

In light of the foregoing, sanctions are appropriate. Therefore it is hereby ORDERED:

1. The Debtor is to pay monetary sanctions of $100 per day payable to the Bankruptcy Court beginning March 12, 2007 and continuing until either (a) the Debtor turns over $100,000 or such lower amount as the Debtor and Trustee agree is sufficient to pay all creditors in full, with interest, and the reasonable costs and expenses of administration of the estate, including the Trustee's commission and professional expenses; or (b) a further order of the Court enters.

2. The Debtor is to immediately contact the Courtroom Deputy, Halina Magerowski, to arrange to **PERSONALLY** appear at a hearing before the Court to be held within the next 30 days. Ms. Magerowski may be contacted by telephone at 508-770-8927 or by email at halina_magerowski@mab.uscourts.gov.

3. Failure to abide by the terms of this Order will result not only in the continuation of the monetary sanction but also in the issuance of a warrant for the arrest and incarceration of the Debtor.

Dated: March 6, 2007

_____
Joel B. Rosenthal
United States Bankruptcy Judge